# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 24, 2006

## STATE OF TENNESSEE v. BILLY ALFRED MATHES

**Appeal as of Right from the Criminal Court for Greene County**
**No. 05-CR-396   James Edward Beckner, Judge**

─────────────

**No. E2006-00414-CCA-R3-CD - Filed March 15, 2007**

─────────────

The Defendant, Billy Alfred Mathes, was convicted by a Greene County jury of burglary. On appeal, he alleges there was insufficient evidence for any rational jury to convict him of that crime and that his sentence of six years was excessive. Finding no error exists, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

D. Clifton Barnes, Morristown, Tennessee, for the Appellant, Billy Alfred Mathes.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; C. Berkeley Bell, District Attorney General; Cecil Mills, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

The following evidence was presented at trial:

Officer Tim Hartman testified he was patrolling his designated area of Greeneville on September 11, 2005, when he received a call stating an alarm had gone off at the Greeneville Middle School. He was close by and responded in a minute or less. He circled the school until he found an open window through which he shined his spotlight. Officer Hartman examined the open window and a nearby door, which he found to be locked. He waited for backup to arrive until he heard noises and saw the Defendant exiting the open window. There was a short chase on foot, and the Defendant was ordered to the ground and handcuffed. A number of photographs were admitted into evidence including ones of the open window, a pill bottle laying in the middle of a hall, a screwdriver, and a filing cabinet that appeared to have been broken open. While the Defendant was being handcuffed,

he stated he could not pay for the damage to the school, but he knew the principal. The Defendant also stated he had been left at the school by someone else, and he was only looking for food because he was hungry. Officer Hartman searched the Defendant for weapons and found a stick of antiperspirant in his pocket. The Defendant told the officer he got it from inside the school.

On cross-examination, Officer Hartman testified he was only one-quarter of a mile or less from the school when he received the call from dispatch. It was only a matter of minutes after Officer Hartman arrived that he saw the Defendant exit the school, the Defendant was chased down, and the backup arrived. The Defendant appeared to have entered at least one room and the corridor off the classroom. The pill bottle which was found apparently belonged to a teacher, and filing cabinets were opened, but Officer Hartman did not actually see the Defendant open the cabinets or do anything with the pill bottle.

John Anderson testified that he was the head of maintenance at the Greeneville Middle School. He stated he received a call from the alarm company, and he told them he would meet the police at the school in five minutes. When he arrived, he found the Defendant handcuffed sitting on the ground. He saw the open window and let the officers inside to search the school. Anderson stated he looked through the school and determined some of the rooms had been entered into by someone because a teacher's desk was moved and drawers were opened. On cross-examination, Anderson admitted he did not see the Defendant do anything as he was not at the school at the time of the break-in.

Linda Stroud, the principal of Greeneville Middle School, testified the Defendant was not an employee or student of Greeneville Middle School, and he was not given permission to enter the school. The school had to have a filing cabinet replaced and the louvers on the windows repaired as a result of the break-in.

The Defendant testified that the night before the morning in question, he was with Darrell Williams and was "on drugs." Williams was in his thirties, and the Defendant did not know if he had any connection to the Greeneville Middle School. The Defendant stated they were there together, and he was the "watch." When he saw a car approach the middle school, he went around the building to tell Williams. He went to the window described by Officer Hartman, and was in the parking lot before he was told to stop. The Defendant stated Officer Hartman could not have seen him exit the window because he did not go through that window. The Defendant testified he did not enter the school or open any drawers. The Defendant testified the antiperspirant was in his pocket because Williams gave it to him as a joke. He explained they were sweating because they were high on cocaine, and they had just walked to the middle school. Although he told Officer Hartman he had entered the school because he was hungry, that was a lie.

On cross-examination, the Defendant stated he had been at the school for about fifteen minutes before he was caught. He knew the antiperspirant was not his, but he was high on cocaine. The Defendant did not know what happened to Williams after the Defendant was caught. The Defendant maintained he never was inside the building, but he assisted Williams.

Officer David Thacker testified in rebuttal that the Defendant told him he had entered the school looking for something to eat.

On this evidence, the jury found the Defendant guilty of burglary. The State filed a notice to seek enhanced punishment for the Defendant as a Range II multiple offender. The trial court accepted the $5000 fine recommended by the jury and stated the range for burglary was four to eight years. The court determined the Defendant should not be given probation based on his history of two violations of probation while he was a juvenile, a number of probation violations as an adult, and an escape from custody as an adult, for which he was convicted.

In addressing the sentence, the trial court noted that in 1996, the Defendant was convicted for theft of $500 or less as an adult, which is a Class A misdemeanor. Then, slightly over a year later, he committed a criminal trespass, a Class C misdemeanor. In 1998, the Defendant was again convicted of theft of less than $500. In 1999, the Defendant pled guilty to aggravated burglary and criminal trespass, a Class C felony and a Class A misdemeanor, respectively. In 2001, an order of protection was entered against the Defendant. Following that, the Defendant was convicted of burglary and theft of between $1000 and $10,000, both Class D felonies. Finally, in 2005, the Defendant was again convicted of criminal trespass, a Class C misdemeanor.[1] The trial court determined the criminal history and convictions, and the fact that the Defendant failed to comply with previous conditions involving release into the community would support enhancing the Defendant's sentence to the maximum in the range, eight years.

The court then examined mitigating factors and determined that the sentence should be mitigated based on the fact that the Defendant's actions "neither caused nor threatened serious bodily injury." Additionally, the court determined that the Defendant had a history of drug abuse and found that to be a mitigating factor. As a result, the trial court sentenced the Defendant to six years as a Range II multiple offender with a thirty-five percent release eligibility date, and a five-thousand dollar fine.

## II. Analysis

The Defendant asserts that there was insufficient evidence for the jury to convict him of burglary, that he should receive probation, and that his sentence is excessive. The State responds that these allegations of error are without merit.

## A. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson

---

[1]During this colloquy, the judge also noted, but did not consider, numerous charges which were retired or dismissed.

v. Virginia, 443 U.S. 307, 319 (1979); see Tenn. R. App. P. 13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); Liakas, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775 (citing State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In this case, the Defendant was convicted of burglary. One can be convicted of burglary when that person, "without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault . . . [or] enters a building and commits or attempts to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402(a)(1), (3) (2006).

Testimony showed the Defendant was spotted by Officer Hartman exiting the Greeneville Middle School through a window. The Defendant ran until he was detained by Officer Hartman. He told Officer Hartman that he entered the school because he was hungry. He also told the officer that a stick of antiperspirant found in his pocket was taken from the school. Additional testimony explained the Defendant did not have permission to enter the building, and there was at least one

filing cabinet which had been searched. This evidence is sufficient for a jury to find the Defendant entered a structure without permission and intended to or did commit a theft while inside. Additionally, because this entry took place at 4:16 a.m., and an alarm sounded, the jury could have reasonably determined that the school was closed at the time of the entry. This allegation of error is without merit.

### B. Sentencing

When a defendant challenges the length, range or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, Tenn. Code Ann. § 40-35-103 (2006), we may not disturb the sentence even if a different result were preferred. State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

We first address the Defendant's request for probation. Tennessee Code Annotated section 40-35-102(5) (2003) states that persons who "possess[] criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." The presentence report shows the following convictions as an adult, in addition to those used to qualify the Defendant as a Range II offender: criminal trespass, assault, false imprisonment, theft under $500, another criminal trespass, and another theft under $500. Additionally, past failed efforts at rehabilitation, as shown by the presentence report, include: three violations of probation, absconding from aftercare, and an escape from DYD custody. See State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996) (allowing juvenile violations of probation to be considered). These convictions, along with the inability to properly complete previous efforts at alternative sentencing fully support a denial of a request for probation pursuant to the above mentioned standard. See Tenn. Code Ann. § 40-35-102(5). We conclude the Defendant has not met his burden for us to hold that the trial court erred in this matter.

As to the sentence itself, the Defendant believes his six-year sentence was excessive for, as the jury found, breaking into a school to look for food and stealing a stick of antiperspirant. Burglary other than in a habitation is a Class D felony. Tenn. Code Ann. § 39-14-402(a)(1), (c) (2006). The range for a burglary in this case is four to eight years, with the presumptive sentence being the

minimum in the range.[2] Tenn. Code Ann. §§ 40-35-112(b)(4), -210(c)(1) (2006). That presumptive sentence of four years may be increased based on enhancement factors enumerated in the statues and then reduced based on any mitigating factors the court finds. Tenn. Code Ann. § 40-35-210(c)(2) (2006). Here, the trial court explicitly found the Defendant's sentence should be enhanced to the maximum in the range, eight years, based on two enhancement factors. First, the court found the Defendant had an extensive criminal history and record, as stated above in the facts, and the Defendant failed to comply with previous conditions involving release into the community. See Tenn. Code Ann. § 40-35-114(1), (8) (2006). Although the trial court stated that the Defendant had a number of charges which were retired or dismissed, we cannot conclude the trial court improperly gave these items any weight. The trial court made sufficient findings of fact and stated these findings in the record. Thus, we may not adjust the sentence, even if we were to believe six years is excessive for this fact situation. See Ross, 49 S.W.3d at 847.

However, even if the trial court did give weight to these dismissed or retired charges, it was harmless due to the otherwise substantial criminal history and failure to comply with previous alternative sentences. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). Again, the Defendant's criminal history includes a conviction for criminal trespass, violation of probation, order of protection, assault, false imprisonment, driving upon a suspended license, theft under $500, another criminal trespass, another theft under $500, absconding from aftercare, and an escape from DYD custody. The Defendant has not met his burden of establishing the trial court erred. Therefore, the Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

---

[2]The Defendant has not challenged the determination that he was a Range II multiple offender. See Tenn. Code Ann. § 40-35-106(a) (2006). For Range II, this Defendant must have had at least two, but not more than four, felony convictions in the Class C, D, or E. Id. The Defendant's presentence report shows convictions for burglary, theft over $1000, and aggravated burglary. These convictions suffice to make the Defendant a Range II offender. See Tenn. Code Ann. §§ 39-14-103, -104, -105, -402, -403 (2006).